IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

EDWARD CANTRALL,

        Plaintiff,

v.                                                                                No. CIV 02-0747 BB/RLP

APPLERA CORPORATION, a foreign
corporation, PE CORPORATION (NY),
formerly known as Perkin-Elmer
Corporation, and MOLECULAR
INFORMATICS, INC., a foreign
corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Plaintiff Edward Cantrall's motion to dismiss Defendant PE Corporation's fraud and negligent misrepresentation counterclaims (Doc. 13). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiff's motion will be DENIED.

## I.
## FACTS AND PROCEDURAL HISTORY

The present motion is addressed to fraud and negligent misrepresentation counterclaims PE Corporation[1] filed against Edward Cantrall based on allegations that Cantrall wrongfully induced the company to acquire Molecular Informatics, Inc. ("MII") from the National Center for

---

[1] Although PE formerly operated as Perkin-Elmer Corp., in order to avoid confusion the Court uses only the abbreviated name under which it now operates.

Genome Resources ("NCGR"). PE specifically contends that Cantrall, in his role as MII's Chief Executive Officer and President, significantly misrepresented MII's financial status throughout the transaction. It filed these counterclaims after Cantrall sued to recover compensation he was allegedly entitled to receive when he left his post-acquisition position within the company.

Cantrall originally filed his complaint in state district court on May 22, 2002. After removing the case pursuant to 28 U.S.C. §§ 1441(b) and 1446, Defendants filed an initial answer with this Court on August 19, 2002. Two weeks later, PE amended the answer to include the counterclaims at issue here. Cantrall now asks the Court to dismiss these counterclaims on the grounds that: (1) collateral estoppel bars PE from establishing reliance, an essential element of both fraud and negligent misrepresentation; (2) the claims are time-barred; (3) PE has failed to plead sufficient facts to state a claim for negligent misrepresentation; and (4) the fraud counterclaim is not pleaded with particularity.

## II.
## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) should only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). In deciding such a motion, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). As such, the Court accepts all well-pleaded allegations as true, construes them in the light most favorable to the non-moving party, and generally confines its analysis to the four corners of the complaint.

GFF Corp., 130 F.3d at 1384; Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001) rev'd on other grounds sub nom. Howsam v. Dean Witter Reynolds, Inc., __ U.S. __, 123 S. Ct. 588, 593 (2002).

## III.
## DISCUSSION

A.    **Collateral Estoppel**[2]

Cantrall first argues that PE is collaterally estopped from establishing reliance, an essential element of both fraud and negligent misrepresentation. See Sauter v. St. Michael's College, 374 P.2d 134, 138 (N.M. 1962); Ruiz v. Garcia, 850 P.2d 972, 978 (N.M. 1993). Collateral estoppel bars the relitigation of an issue raised and decided in a prior adjudication. Silva v. State, 745 P.2d 380, 382 (N.M. 1987). In New Mexico,[3] the party asserting the doctrine must establish with "clarity and certainty" that: (1) the party against whom it would apply was a party or in privity with a party to the first case; (2) the prior litigation involved a different cause of action; (3) the

---

[2]Collateral estoppel is an affirmative defense that generally should be invoked in a responsive pleading pursuant to Rule 8(c). Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 350 (1971). However, a court is entitled to address whether the doctrine applies in the context of a motion to dismiss so long as all information relevant to the analysis can be found in the complaint and documents appropriately subject to judicial notice. Gass v. United States, 4 Fed. Appx. 565, 567, 2001 U.S. App. LEXIS 1513, **4 (10th Cir. 2001) (citing Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)). Here, Cantrall's argument relies exclusively on the pleadings in this case and the record from an earlier lawsuit litigated before this Court. Since the latter is subject to judicial notice in the Tenth Circuit, Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), the Court will address the merits of Cantrall's argument without requiring technical compliance with Rule 8(c) or converting the motion into a Rule 56 motion for summary judgment. See generally GFF, 130 F.3d at 1384-85.

[3]Although federal law governs the collateral estoppel effect of federal judgments, the Court determines the preclusive effect of a diversity judgment by referring to the law of the state in which the court that entered the judgment sits. Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d 982, 986 (10th Cir. 2002). New Mexico law therefore governs the issue in this case.

3

relevant issue was actually litigated; and (4) determination of the issue was necessary to the earlier judgment. Shovelin v. Central New Mexico Elec. Coop., Inc., 850 P.2d 996, 1000 (N.M. 1993); State *ex rel.* Martinez v. Kerr-McGee Corp., 898 P.2d 1256, 1260 (N.M. Ct. App. 1995).

Cantrall contends that Judge Conway determined in an earlier lawsuit between PE and NCGR that the company could not have reasonably relied on the representations at issue. See National Center for Genome Resources v. Perkin-Elmer Corp., No. 99cv0679. In that case, NCGR filed a complaint with the Court seeking to establish its right to collect money held in escrow pursuant to the MII purchase agreement. PE responded by filing counterclaims for common law fraud, negligent misrepresentation, breach of contract, and state securities fraud. Before the case settled, Judge Conway dismissed PE's securities fraud counterclaim. The accompanying Memorandum Opinion and Order includes a lengthy discussion of reliance which Cantrall reads as sufficiently broad to decide the issue for purposes of this case. (Pl.'s Mem. Supp. Mot. Dismiss at Ex. B).

The Court rejects Cantrall's collateral estoppel argument for two reasons. First, applying Judge Conway's reliance analysis to PE's fraud and negligent misrepresentation counterclaims would be inconsistent with an earlier order he entered refusing to dismiss identical counterclaims in the PE/NCGR case. (Opp'n Mot. Dismiss at Ex. 1). As a result, the Court cannot be certain of the scope of the reliance issue that was actually decided, rendering it inappropriate to bar PE from raising fraud and negligent misrepresentation anew in this case. Standefer v. United States, 447 U.S. 10, 22-23 n.17 (1980) (holding that where the court in prior litigation reaches irreconcilable determinations of the relevant issue, collateral estoppel does not apply).

Second, Judge Conway's reliance analysis was not essential to the order dismissing PE's securities fraud counterclaim. More specifically, the conclusion that PE validly waived this claim provided an independently sufficient basis for the order sustainable on the fact that the company was a sophisticated business entity negotiating with NCGR at arm's length. See <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 344 (2d Cir. 1996). The portions of Judge Conway's opinion that turn on the issue of reliance therefore provide alternative grounds for the holding and are not entitled to preclusive effect. <u>Manlove v. Sullivan</u>, 775 P.2d 237, 243 (N.M. 1989). Accordingly, PE is entitled to go forward with its counterclaims in this case unencumbered by the record from the PE/NCGR litigation.

**B.     Setoff/Recoupment**

Cantrall next argues that PE's fraud and negligent misrepresentation counterclaims are time-barred. He is correct insofar as PE might have pursued these claims <u>offensively</u>.[4] However, PE argues instead that it is entitled to pursue its counterclaims <u>defensively</u> pursuant to N.M. Stat. Ann. § 37-1-15 (2002). Section 37-1-15 provides that:

> A setoff or counterclaim may be pleaded as a defense to any cause of
> action, notwithstanding such setoff or counterclaim may be barred by the
> preceding provisions of this chapter, if such setoff or counterclaim so
> pleaded was the property or right of the party pleading the same at the time

---

[4] In New Mexico, claims for fraud and negligent misrepresentation are both subject to a four year statute of limitations that runs from the time the injured party either discovers, or through reasonable diligence should have discovered, the relevant misrepresentations. N.M. Stat. Ann. § 37-1-4 (2002); <u>Ambassador East Apts., Investors v. Ambassador East Investments</u>, 746 P.2d 163, 165 (N.M. Ct. App. 1987). Given the fact that PE took control of MII four years and nine months before filing its counterclaims, and concedes that it became aware of the relevant information "shortly after" acquiring the company, the limitations period on these claims has certainly run. See generally <u>Pacheco v. Fresquez</u>, 164 P.2d 579, 583 (N.M. 1945) (holding that the party pursuing a claim that appears time-barred bears the burden of proving it remains actionable).

5

> it became barred and at the time of the commencement of the action, and
> the same was not barred at the time the cause of action sued for accrued or
> originated; but no judgment for any excess of such setoff or counterclaim
> over the demand of the plaintiff as proved shall be rendered in favor of the
> defendant.

N.M. Stat. Ann. § 37-1-15 (2002). PE specifically argues that the statute revives counterclaims for the limited purpose of offsetting damages a party would otherwise have to pay. Cantrall contends that the statute should instead be read to simply toll the limitations period for counterclaims still actionable at the time a claim is filed. His argument is based on the fourth clause of the statute, which provides that a time-barred counterclaim is only revived if it was not barred at the time the other side's claim "accrued or originated." In his view, "originated" was intended to mean "filed suit." He thus argues that PE's counterclaims are not protected by § 37-1-15 because they were barred when Cantrall filed his complaint in this case.

Such a construction is illogical when "originated" is read in the context of the statute as a whole. Regents of the Univ. of New Mexico v. New Mexico Fed'n of Teachers, 962 P.2d 1236, 1246 (N.M. 1998) ("We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another."). In particular, reading "originated" to mean "filed suit" directly conflicts with the use of the phrase "commencement of the action" in the immediately preceding clause. Since the New Mexico legislature specifically provides that an action "commences" when it is filed, N.M. Stat. Ann. § 37-1-13 (2002), it would be impermissible to define "originated" to mean the same thing. Id. at 1247-48.

The decisions issued by courts applying § 37-1-15 further undermine Cantrall's proposed reading of the statute. For example, the New Mexico Court of Appeals has held that § 37-1-15 is a "statutory right of recoupment." City of Carlsbad v. Grace, 996 P.2d 1178, 1183-84 (N.M. Ct.

App. 1998).  Moreover, in Hartford v. Gibbons & Reed Co., the Tenth Circuit noted that although many jurisdictions toll the limitations period for live counterclaims from the time a plaintiff files suit, § 37-1-15 addresses the "different situation" that arises where a counterclaim is governed by a shorter statute of limitations than the plaintiff's claim.  617 F.2d 567, 570 (10th Cir. 1980).

Having held that "originated" cannot mean "filed suit," the Court is left with the question of how that term should be defined.  Modern courts faced with this issue have reached two conclusions.  Some define "originated" as synonymous with "accrued."[5]  Courts following the second approach hold that a cause of action "originates," or "arises," when the legal injury occurs and "accrues" when that injury matures into an actionable claim.[6]  This latter view is consistent with New Mexico precedent holding that the contractual language "arising out of" is synonymous with "originating from" or "flowing from."  Baca v. New Mexico State Highway Dept., 486 P.2d 625, 628 (N.M. 1971).

However, since § 37-1-15 uses both the time a claim accrues and the time it originates as benchmarks a party must satisfy to invoke the statute, the Court need not decide which view the New Mexico Supreme Court would adopt.  Under either definition, a counterclaim must only

---

[5]See Thompson v. Crawford, No. 17460, 1991 Mo. App. LEXIS 1651, at *10 (Mo. Ct. App. 1991); Renfroe v. Eli Lilly & Co., 541 F. Supp. 805, 807 (E.D. Mo. 1982); Pattridge v. Palmer, 277 N.W. 18, 19 (Minn. 1937); cf. Bergin v. Temple, 111 P.2d 286, 289 (Mt. 1941); ; Bruner v. Martin, 93 P. 165, 167  (Kan. 1907); Ins. Co. of North America v. ABB Power Generation, Inc., 690 N.E.2d 1249, 1251-52 (Ct. App. N.Y. 1997).

[6]See generally Murphy v. Owens-Corning Fiberglass Corp., 550 S.E.2d 589, 594 (S.C. App. 2000 or 2001); Kaplan v. Shure Brothers, Inc. 153 F.3d 413, 422 (7th Cir. 1998); Conrad v. Hazen, 665 A.2d 372, 374-75 (N.H. 1995); Owens-Illinois, Inc. v. Armstrong, 604 A.2d 47, 53-54 (Ct. App. Md. 1992); Highland v. Bracken, 560 N.E.2d 406, 409 (App. Ct. of Ill. 1990).

remain actionable until the opposing party has the right to file suit on its claim.  Here, PE's counterclaims are therefore revived because (1) the company held the right to sue at the time the limitations period ran and at the time Cantrall filed his complaint in this case, and (2) its claims were not barred when the injuries Cantrall complains of occurred and became actionable.  The Court accordingly finds that PE is entitled to pursue its counterclaims for the limited purpose of offsetting any damages Cantrall might be awarded in this case.

**C.      Sufficiency of Negligent Misrepresentation Claim[7]**

Cantrall further argues that PE has failed to state a claim for negligent misrepresentation because it alleges the representations at issue were intentional rather than negligent.  In New Mexico, negligent misrepresentation and fraud are independent causes of action.  State *ex rel.* Conley Lott Nichols Machinery Co. v. Safeco Ins. Co. of America, 671 P.2d 1151, 1154 (N.M. Ct. App. 1983).  The former is analyzed applying ordinary negligence principles, only needs to be shown by a preponderance of the evidence, and does not require proof that the misrepresentation was intentionally made.  Id.  The latter turns on whether the representations were made with the intent to mislead and must be proved by clear and convincing evidence.  Id.  These distinctions have led the New Mexico Supreme Court to note that negligent misrepresentation is not a "lesser included cause of action within a claim for...fraud."  Ledbetter v. Webb, 711 P.2d 874, 879 (N.M. 1985) (internal quotations omitted).  That Court also adheres to the view that a single misrepresentation cannot be both fraudulent and negligent.  Id. at 880.

---

[7] Because ordinary principles of negligence govern claims for negligent misrepresentation, the Court reviews the sufficiency of this counterclaim under the notice pleading standards set forth in Rule 8(a) rather than the more stringent requirements of Rule 9(b).  See Professional Serv. Indus. v. Kimbrell, 766 F. Supp. 1557, 1561 (D. Kan. 1991).

However, a party that has been deliberately misled but cannot meet the higher burden of proof required to recover for fraud can instead recover for negligent misrepresentation if it establishes (1) breach of a duty to disclose information, (2) detrimental reliance, and (3) damages. Sims v. Craig, 627 P.2d 875, 877 (N.M. 1981); Ruiz v. New Mexico Title Co., 850 P.2d 972, 977 (N.M. 1993). PE specifically addresses each of these elements in support of its counterclaim, and, although it may eventually become clear that its counterclaims for fraud and negligent misrepresentation are inconsistent, it would be premature to consider the issue at this stage of the litigation. See Fed. R. Civ. P. 8(e)(2) (permitting parties to plead inconsistent claims in the alternative). The Court therefore declines to dismiss PE's negligent misrepresentation counterclaim.

**D.      Rule 9**

In his final argument, Cantrall contends that PE failed to plead his fraud counterclaim with particularity as required by Rule 9. To satisfy Rule 9(b), a fraud claim must provide the defendant sufficient notice of the factual basis of the claim to allow him to begin preparing a proper defense. Schwartz v. Celestial Seasonings, 124 F.3d 1246, 1252 (10th Cir. 1997). Read in conjunction with the notice-pleading requirements of Rule 8, this standard specifically requires that plaintiffs set forth the time, place, and contents of the false representations at issue; the identity of the responsible party; and the resulting injury. Id.

Here, PE limits the time period during which the fraudulent conduct took place to the six months of negotiations for the purchase of MII. It further provides specific dates on which MII prepared documents, took action, and became aware of relevant information. (Doc. 4, ¶¶ 6, 7, 11, 12, 14-18, 23-29). With regard to place and content, the company both identifies the

9

documents and communications in which the statements were made, and specifically alleges the misrepresented or omitted facts. (Doc. 4, ¶¶ 6, 7, 15, 16, 18, 23-29). On the issue of identity, PE ties Cantrall to the alleged fraud through allegations that he directly misled the company, ordered others to engage in fraudulent conduct, and was responsible for the fraudulent representations based on his position as President and CEO of MII. (Doc. 4, ¶¶ 5, 6, 9, 10, 13, 15, 16-18, 24-30). Finally, with regard to the resulting injury, PE alleges that Cantrall's fraud caused it to enter agreements it otherwise would not have entered. (Doc. 4, ¶ 31-32). Allowing PE to go forward with its fraud counterclaim thus poses no threat to Rule 9's dual goals of fair notice and discouraging meritless fraud claims. See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 & n.4 (7th Cir. 1994). Accordingly, the Court rejects Cantrall's contention that PE failed to state a counterclaim for fraud.

## IV.
## CONCLUSION

For the reasons set forth above, the Court finds that Defendant PE Corp. has successfully stated counterclaims for fraud and negligent misrepresentation against the Plaintiff, Edward Cantrall.

## ORDER

**WHEREFORE**,

**IT IS ORDERED** that Plaintiff Edward Cantrall's motion to dismiss PE Corporation's counterclaim (Doc. 13) be DENIED.

**DATED** at Albuquerque this 10th day of April, 2003.

                                                                        */s/ Bruce D. Black*
                                                                         BRUCE D. BLACK
                                                                         United States District Judge

**Attorneys:**

For Plaintiff:

        Cerianne Lynn Mullins and Charles Robert Peifer, Albuquerque, N.M.

For Defendants:

        Geoffrey D. Rieder and Wayne R. Suggett, Albuquerque, N.M.